U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

2021 JUN 30 PM 4: 33

CLERK
BY ⟨tw⟩
DEPUTY CLERK

SAIM SARWAR,

    Plaintiff,

v.

    Case No.: 2:20-cv-00219

ANDAL LLC,

    Defendant.

## DEFAULT JUDGMENT ORDER

On December 28, 2020, Plaintiff Saim Sarwar filed a Complaint alleging Defendant Andal LLC violated Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101-213. Defendant was served with the Complaint on January 14, 2021. A clerk's default was entered against Defendant on February 8, 2021, based on its failure to answer the Complaint or otherwise defend this action. On that same date, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiff moved for entry of a default judgment against Defendant.

### I.    Findings of Fact.

The following findings of fact are derived from the Complaint's allegations which are taken as true. *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (observing "the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true"). Plaintiff is a resident of New York and alleges he "qualifies as an individual with disabilities as defined by the ADA" because he is unable to "walk[ ] more than a few steps without assistive devices[ ]" and "ambulates in a wheelchair or with a cane or other support and has limited use of his hands." (Doc. 1 at 1, ¶ 1.) Plaintiff is "unable to tightly grasp, pinch, and twist of the wrist to operate." *Id.*

Plaintiff has difficulty operating doorknobs, sink faucets, or other operating mechanisms. He is hesitant to use sinks that have unwrapped pipes because they pose a danger of scraping or burning his legs. Sinks must be at the proper height so that he can put his wheelchair underneath to wash his hands, he requires grab bars both behind and beside a commode so he can safely transfer, and he has difficulty reaching the flush control if it is on the wrong side.

In addition, Plaintiff requires accessible "handicap" parking spaces near the entrances of facilities, and spaces and aisles must be sufficiently wide so that he can embark and disembark from a ramp into a vehicle. *Id.* Routes connecting the "handicap" spaces to a facility must be level, properly sloped, sufficiently wide, and without cracks, holes, or other hazards that pose a danger of tipping, catching wheels, or falling. *Id.* at 2, ¶ 1. These areas must be free of obstructions or unsecured carpeting that make passage difficult or impossible. Amenities must be sufficiently lowered so that Plaintiff can reach them.

Defendant owns the Weathervane Motel in Manchester, Vermont (the "Property"), which is a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 C.F.R. §§ 36.201(a) and 36.104. Defendant, either itself or through a third party, accepts online reservations for guest accommodations at the Property through one or more websites, which also facilitate a review of the Property's information. Plaintiff visited these websites to review and assess the Property's accessible features and ascertain whether they meet the requirements of 28 C.F.R. § 36.302(e) and his accessibility needs. However, he was unable to do so because Defendant failed to comply with the requirements set forth § 36.302(e), thereby denying Plaintiff the same goods, services, features, facilities, benefits, advantages, and accommodations of the Property available to the general public. Plaintiff alleges the websites for the Property located at www.us.trip.com, www.expedia.com, www.hotels.com, www.orbitz.com, www.cheaptickets.com, and www.travelocity.com did not identify or allow for

reservation of accessible guest rooms and did not provide sufficient information regarding accessibility at the Property.

Plaintiff intends to revisit Defendant's online reservation websites in the future to test them for compliance. He allegedly maintains a list of all hotels he has initiated lawsuits against with several columns which he continually updates by, among other things, entering the dates he visited and plans to visit in the future the hotel's online reservation websites. It is his practice to visit the online reservation websites multiple times prior to filing a complaint and visits again after a complaint is filed. Once a judgment is obtained or a settlement agreement is reached, he records the date by which the hotel's online reservation websites must be compliant and revisits them when that date arrives.

Plaintiff alleges he is without an adequate remedy at law and is suffering irreparable harm and has suffered and continues to suffer frustration and humiliation as the result of the alleged discrimination caused by Defendant's use of online reservation websites. By continuing to operate the online reservation websites with discriminatory conditions, Defendant allegedly contributes to Plaintiff's sense of isolation and segregation, depriving him the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations available to the general public. "Defendant's online reservation system serves as a gateway to [the Property]." *Id.* at 7, ¶ 13. "Because this online reservations system discriminates against Plaintiff, it is . . . more difficult [for Plaintiff] to book a room at [the Property] or make an informed decision as to whether the facilities at [the Property] are accessible." *Id.* Although Plaintiff broadly alleges that "Defendant, either by itself or by and through a third party, accepts reservations for its hotel online through one or more websites[,]" Plaintiff does not allege that Defendant's own website is non-compliant. *Id.* at 4, ¶ 9. Accordingly, the only issue before the court is whether Defendant's use of third party online reservation websites violates the ADA.

## II. Conclusions of Law and Analysis.

Title III of the ADA, requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content. According to the application regulations:

> A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party—
>
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
>
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;
>
> (iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;
>
> (iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and
>
> (v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

28 C.F.R. § 36.02(e)(1).

### A.   Whether Plaintiff has Standing.

In *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013), the Second Circuit explained:

> To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and

4

> (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision. *See Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs seeking injunctive relief must also prove that the identified injury in fact presents a "real and immediate threat of repeated injury." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).

*Kreisler*, 731 F.3d at 187.

"Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available." *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (citation omitted); *see* 42 U.S.C. § 12188(a) (providing that the remedies available to individuals shall be those set forth in 42 U.S.C. § 2000a-3(a), which allows a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act of 1964); *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (noting that Title II allows for injunctive relief only).

Plaintiff does not specifically identify the medical conditions that give rise to the challenges he faces in accessing third party websites used by Defendant for online reservations although he does allege he "ambulates with a wheelchair or with a cane or other support and has limited use of his hands." (Doc. 1 at 1, ¶ 1.) Under the ADA, it is sufficient that he is unable to engage in a major life activity such as walking without assistive devices and ambulating in a wheelchair or utilizing a cane or other support. *See E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005) ("To be disabled with regard to the major life activity of walking, the [person] must be 'substantially limited' in her ability to walk, and the limitation must be permanent or long term, and considerable compared to the walking most people do in their daily lives."); *see also* 42 U.S.C. § 12102(4)(A) ("The definition of disability [under the ADA] shall be construed in favor of broad coverage of individuals[.]"); 28 C.F.R. § 36.101(b) ("The primary purpose of the ADA Amendments Act is to make it easier for people with disabilities to obtain protection under the ADA . . . . [and] the definition of 'disability' in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by

the terms of the ADA. The primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of 'disability.' The question of whether an individual meets the definition of 'disability' under this part should not demand extensive analysis.").

Plaintiff further alleges that he is a "'tester' for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA." (Doc. 1 at 2, ¶ 2.) With regard to whether an individual has standing to sue as a "tester," in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the Supreme Court held that two individuals had standing as "testers" when they "without an intent to rent or purchase a home or apartment, pose[d] as renters or purchasers for the purpose of collecting evidence of unlawful steering practices[ ]" under the Fair Housing Act ("FHA"). *Id.* at 373. "[T]he injury underlying tester standing [was] the denial of the tester's own statutory right to truthful housing information caused by misrepresentations to the tester[.]" *Id.* at 375. In so holding, the Supreme Court noted that "'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Id.* at 373 (alterations omitted) (quoting *Warth v. Seldin,* 422 U.S. 490, 500 (1975)). Section 804(d) of the FHA makes it unlawful to represent "[t]o any person because of race . . . that any dwelling is not available for . . . rental when such dwelling is in fact so available." *Id.* (quoting 42 U.S.C. § 3604(d)). The Court concluded "[t]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d)." *Id.* at 374.

Following *Havens Realty*, the Second Circuit decided *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993) in which four plaintiffs sued under the FHA challenging advertisements which exclusively depicted white models in the marketing of apartments. The plaintiffs did not intend to rent defendant's apartments, but brought the

suit challenging the advertisements as "testers." The Second Circuit held that there was "no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by the [plaintiffs], who were confronted by advertisements indicating a preference based on race." *Id.* at 904.

> Under the ADA:
>
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any public place of accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
>
> . . .
>
> [D]iscrimination includes --
>
> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

42 U.S.C. § 12182(a)-(b).

In the context of the ADA, the Second Circuit has found that a plaintiff who visits a public accommodation has standing when he or she plausibly alleges an intent to return to the accommodation, but not where a plaintiff fails to allege a "concrete plan" to return. *Compare Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 72 (2d Cir. 2011) (concluding a tester plaintiff had standing because he "avow[ed] a present intention to return to the Nanuet Mall, an act that depends only upon his own volition, and the likelihood of which finds some support in professional and family reasons"), *with Harty v. Greenwich Hospitality Group, LLC*, 536 F. App'x 154, 155 (2d Cir. 2013) (holding that same tester plaintiff who often visited Nyack, New York but had visited a hotel in nearby Stamford, Connecticut only once did not have standing because he did not allege evidence of "any *concrete plan* to stay overnight in Stamford in the future[ ]" and his "tester" allegation was also "unavailing as it too lack[ed] the requisite link to Stamford,

Connecticut") (emphasis supplied). The Second Circuit has not ruled on whether tester status alone is sufficient, however, several other circuits have done so.[1]

In this case, Plaintiff alleges that he visited third party websites and that none of them contained information about the Property's accessibility features nor allowed him to make a reservation at the Property in an accessible room. Plaintiff further states he "intends to revisit the Defendant's website in the near future to reserve a guest room and otherwise avail [himself] of the goods, services, features, facilities, benefits[,] advantages, and accommodations of the Property[.]" (Doc. 6 at 4.) Plaintiff therefore plausibly alleges that he suffered an injury in fact, that there is a future risk of injury and, as a result, that he has standing to assert an ADA claim and seek injunctive relief. *See Houston*, 733 F.3d at 1334 (concluding that "the alleged violations of [the plaintiff's] statutory rights under Title III may constitute an injury-in-fact, even though he is a mere

---

[1] The Eleventh Circuit held that an individual's "status as a tester" did not deprive him of standing under the ADA. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013) (concluding that: the "legal right created by §§ 12182(a) and 12182(b)(2)(A)(iv) *does not* depend on the motive behind [the plaintiff's] attempt to enjoy the [public accommodation]"; "[n]othing in [the] statutory language precludes standing for tester plaintiffs[ ]"; and "Congress imposed no 'bona fide' requirement in the statutory provisions at issue here, namely 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(iv), and 12188(a)(1) of the ADA[.]"). *Id.* at 1332-33 (emphasis in original). Similarly, the Tenth Circuit held that a plaintiff had tester standing under the ADA because "Title III provides remedies for 'any person' subjected to illegal disability discrimination." *Colo. Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014). The First Circuit also concluded that "Congress did not limit the protections of the ADA to 'clients or customers' or otherwise impose a bona fide visitor requirement[ ]" and "such limitations should not be read into the ADA." *Suárez-Torres v. Panaderia Y Reposteria España, Inc.*, 988 F.3d 542, 550-51 (1st Cir. 2021); *see also C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017) (concluding that "motivation is irrelevant to the question of standing under Title III of the ADA[ ] . . . [and the plaintiffs'] status as ADA testers thus does not deprive them of standing"). Legal rights created by the ADA do not depend on a plaintiff's motive to access a place of public accommodation's reservation system. Instead, "the relevant operative phrases [of the ADA] are (1) '*[n]o individual* shall be discriminated against on the basis of disability,' 42 U.S.C. § 12182(a) (emphasis added); and (2) '*any person* who is being subjected to discrimination on the basis of disability' may bring suit." *Houston*, 733 F.3d at 1332 (emphasis in original) (quoting 42 U.S.C. § 12188(a). Accordingly, "[n]othing in that statutory language precludes standing for tester plaintiffs; if anything, 'no individual' and 'any person' are broad terms that necessarily encompass testers." *Id.*

8

tester of ADA compliance"); *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *11 (S.D.N.Y. Dec. 4, 2019) (holding that because a plaintiff "claimed that he was denied access to the Website, not Defendant's physical location itself[,] . . . [h]e is only required to have established a reasonable inference that he *intended to return* to the Website") (emphasis supplied) (footnote omitted).

### B. Whether Defendant's Use of Third Party Online Reservation Websites Violates the ADA.

The ADA, which prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation, 42 U.S.C. § 12182(a), is a remedial statute that "should be construed liberally to afford people with disabilities equal access to the wide variety of establishments available to the nondisabled." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676-77 (2001) (citing S. Rep. No. 101-116, at 59 (1989); H.R. Rep. No. 101-485, pt. 2, at 100 (1990), U.S. Code Cong. & Admin. News 1990, pt. 2, at 303, 382-383)) (footnote omitted) (internal quotation marks omitted). In implementing the ADA, Congress intended to remedy discriminatory effects suffered by individuals with disabilities. Among these disabilities are individuals with mobility disabilities. 42 U.S.C. § 12101(a)(5). To prove a violation of Title III of the ADA, "a plaintiff must show that she is disabled within the meaning of the ADA, that the defendant is a private entity that owns or operates a place of public accommodation, and that the plaintiff was denied accommodation because of her disability." *Collins v. Dartmouth-Hitchcock Med. Ctr.*, 2015 WL 268842, at *4 (D.N.H. Jan. 21, 2015). Plaintiff qualifies as a person with a disability because he has a "physical impairment" that "substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1)(A).

In 2018, Department of Justice ("DOJ") Assistant Attorney General Stephen E. Boyd affirmed in a letter to members of Congress the DOJ's position that Title III applies to websites operated by private entities:

> The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' Websites over 20 years ago. This interpretation is consistent with the ADA's title III requirement that the

9

goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.

Courts in the Second Circuit have construed websites as "places of public accommodation" under Title III of the ADA. *See, e.g.*, *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 393 (E.D.N.Y. 2017) ("It is unambiguous that under Title III of the ADA, [defendant's website] is a place of public accommodation."); *Nat'l Ass'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 571 (D. Vt. 2015) (holding as a matter of first impression that a website is a "place of public accommodation" because requiring a connection to a physical space would mean that "a company could freely refuse to sell its goods or services to a disabled person as long as it did so online rather than within the confines of a physical office or store"). Other courts have reached a similar conclusion.[2]

Although the Third, Sixth, Ninth, and Tenth Circuits have concluded that a "place of public accommodation" requires "some connection between the good or service complained of and an actual physical place[,]" *Weyer v. Twentieth Century Fox Film*

---

[2] *See, e.g.*, *Meyer v. Walthall*, 2021 WL 1326565, at *21 (S.D. Ind. Mar. 25, 2021) ("There is no articulable reason why Defendants' operation of websites that provide information about and applications for vital government benefits programs administered by Defendants would fall outside the broad category of government activities encompassed by 'services, programs, or activities.'"); *Mejico v. Alba Web Designs, LLC*, 2021 WL 280065, at * 7 (W.D. Va. Jan. 25, 2021) (holding as a matter of first impression that a commercial website offering goods and services is a place of "public accommodation" even if it has no physical location open to the public); *Payan v. Los Angeles Cmty. Coll. Dist.*, 2019 WL 9047062, at *13 (C.D. Cal. Apr. 23, 2019) (concluding plaintiffs "established as a matter of law that [defendant] discriminated against blind students by denying blind students meaningful access to important enrollment management information on [defendant's] website"); *Hindel v. Husted*, 2017 WL 432839, at *5 (S.D. Ohio Feb. 1, 2017) (finding defendant's website violated the ADA because "it is not formatted in a way that is accessible to all individuals, especially blind individuals like the Individual Plaintiffs whose screen access software cannot be used on the website"); *Reininger v. Okla.*, 292 F. Supp. 3d 1254, 1263 n.3 (W.D. Okla. 2017) ("'Public accommodations' may not be limited to buildings and physical structures but may include providers of services and 'service establishments,' like internet websites."); *Martin v. Metro. Atlanta Rapid Transit Auth.*, 225 F. Supp. 2d 1362, 1377 (N.D. Ga. 2002) ("This Court holds that the Plaintiffs have met their burden to show a likelihood of success on the merits for Defendants' failure to make available to individuals with disabilities adequate information concerning transportation services through accessible formats and technology to enable users to obtain information and schedule service.").

*Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000); *see also Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998) (finding the term "public accommodation" does not refer to non-physical access); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (holding "a public accommodation is a physical place"), the First and Seventh Circuits have rejected that approach. *See Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers*, 268 F.3d 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation. An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store."); *Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994) ("[T]he phrase ['public accommodation'] is not limited to actual physical structures."). The Second Circuit has not squarely decided whether a public accommodation is limited to physical spaces, however, it has held that "Title III's mandate that the disabled be accorded 'full and equal enjoyment of the goods [and] services . . . of any place of public accommodation' suggests that the statute was meant to guarantee more than mere physical access." *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32 (2d Cir. 1999).

In this case, even under the First and Seventh Circuit's approach, Defendant's use of third party websites to book reservations provides a connection between a service and the Property as a physical space. Although it is not clear the extent to which Defendant had control over third-party websites, it can choose not to use them. The applicable regulations make it clear that use of a third party's services does not render the ADA inapplicable. *See* 28 C.F.R. § 36.302(e)(1) ("A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including . . . through a third party" must comply with § 36.302(e)(1)(i)-(v)).

Due to his disability, Plaintiff was denied accommodation and equal access to the Property, encountering barriers because of Defendant's use of third party online

reservation websites that fail to identify or allow for reservation of accessible guest rooms. Because Defendant did not provide Plaintiff with full and equal access to the Property's accessibility information and room options, it has violated the ADA. Defendant's violation of the ADA has harmed Plaintiff, and in the absence of an injunction, will continue to harm Plaintiff as he attempts to reserve a room at the Property or otherwise use the Property's facilities in the future.

### C.  Whether Injunctive Relief is Available to Redress Defendant's Violations of the ADA.

An "injunction is an extraordinary remedy never awarded as of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)) (citation omitted). "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). These same factors are considered in determining whether to authorize permanent injunctive relief.

"A plaintiff seeking injunctive relief bears the burden of demonstrating it will suffer real and imminent, not remote, irreparable harm in the absence of a remedy." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 290 (2d Cir. 2003) (internal quotation marks omitted). "In general, a district court has broad discretion to enjoin possible future violations of law where past violations have been shown . . . . Courts are free to assume that past misconduct is highly suggestive of the likelihood of future violations." *Id.* (internal quotation marks omitted).

Plaintiff has demonstrated that he has suffered an injury because Defendant's use of third party online reservation websites that failed to comply with the ADA prevented him from accessing the Property. A private individual such as Plaintiff may only obtain

12

injunctive relief for violations of Title III; he cannot recover monetary damages. *See Newman*, 390 U.S. at 402 (concluding only injunctive relief available as remedy for violation of Title II of Civil Rights Act of 1964). The scope of injunctive relief authorized under the ADA is broad: "In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities[.] Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy[.]" 42 U.S.C. § 12188(a)(2).

Plaintiff will suffer a continued hardship absent an injunction due to Defendant's use of non-compliant third party online reservation websites as he will be unable to ascertain whether there is an accessible room available for him to reserve. In contrast, no hardship beyond asking the third party online reservation websites to bring their services into ADA compliance will be suffered by Defendant if an injunction is granted. In the alternative, Defendant can choose not to use those services.

The public has a strong interest in eliminating discrimination and enforcing the ADA. *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 160 (2d Cir. 2013) "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012) (internal quotation marks omitted).

Federal Rule of Civil Procedure 65 governs the scope and content of permanent injunctions. The rule mandates that every order granting an injunction must: "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d).

## INJUNCTION

> 1. Within sixty (60) days of this Order, Defendant shall ensure its use of third party online reservation websites complies with the requirements of 28 C.F.R. § 36.02(e) by providing information regarding the Property's accessibility to individuals with disabilities and the ability to make

reservations for ADA compliant rooms in the following ways:

    (a) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

    (b) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

    (c) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

    (d) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

    (e) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others;

2. The court shall retain jurisdiction for a period of six (6) months after the date of this Order to ensure Defendant's use of third party online reservation websites is free of ADA accessibility violations;

3. Plaintiff shall serve this Default Judgment on Defendant within thirty (30) days; and

4. Plaintiff, as the prevailing party, may file a fee and costs petition before the court surrenders jurisdiction.[3]

SO ORDERED.

---

[3] Pursuant to the ADA, a court, in its discretion, may award reasonable attorney's fees, including litigation expenses and costs, to the prevailing party. 42 U.S.C. § 12205.

Dated at Burlington, in the District of Vermont, this 30th day of June, 2021.

Christina Reiss, District Judge
United States District Court

JUDGMENT ENTERED ON DOCKET
DATE: June 30, 2021